Darren K. Cottriel (SBN 184731)
dcottriel@jonesday.com
John A. Vogt (SBN 198677)
javogt@jonesday.com
Edward S. Chang (SBN 241682)
echang@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone:   +1.949.851.3939
Facsimile:    +1.949.553.7539

Attorneys for Defendant
Lennar Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SUNIL DANIEL, as an individual and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>LENNAR CORPORATION,<br><br>           Defendant. | Case No. 8:19-cv-00452-JLS-DFM<br><br>Hon. Josephine L. Staton<br><br>**LENNAR CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 12 MOTION TO DISMISS PLAINTIFF'S COMPLAINT, TO STRIKE CLASS ALLEGATIONS, AND REQUEST FOR STAY**<br><br>Hearing Date:    September 27, 2019<br>Hearing Time:   10:30 a.m.<br>Courtroom:     10A<br><br>Complaint Served: March 13, 2019 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.   Plaintiff Lacks Standing Under Article III

    A.   Plaintiff Did Not Suffer Any Cognizable Injury As A Matter Of
        Law .................................................................................................. 6

    B.   The FCC's Promulgation Of Technical Consent Requirements
        Does Not Automatically Confer Article III Standing ...................... 10

II.  Plaintiff's TCPA Claim Is Also Deficiently Pled ......................................... 12

    A.   Plaintiff Has Not Alleged (And Cannot Plausibly Allege) That
        The Text He Received Was An Unsolicited Communication ........... 12

    B.   Plaintiff Also Fails To Plead Any Facts Supporting His Claim
        For Treble Damages ........................................................................ 14

III. Plaintiff's Class Allegations Are Infirm And Must Be Stricken ................. 15

    A.   Plaintiff's Omnibus Class Cannot Be Certified, As It Seeks To
        Include Putative Class Members Who Lack Standing ...................... 15

    B.   This Court Lacks Personal Jurisdiction Over Lennar As To The
        Non-Resident Putative Class Members ............................................ 17

IV.  Absent Dismissal, The Court Should Stay This Case .................................. 21

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ...........................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................5, 14, 15

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ...........................................................................18

*Baird v. Sabre Inc.*,
    995 F. Supp. 2d 1100 (C.D. Cal. 2014) ...........................................................9

*Bakov v. Consol. World Travel, Inc.*,
    No. 15-cv-2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) ...........................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................5

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    137 S. Ct. 1773 (2017) ...........................................................................passim

*Buhr v. ADT, Inc.*,
    No. 18-cv-80605 (S.D. Fla. 2019) ...........................................................................22

*Chavez v. Church & Dwight Co.*,
    No. 17-cv-1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ...........................20

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ...........................................................................21, 22

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ...........................................................................19

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ...........................................................................18

*DeBernardis v. NBTY, Inc.*,
   No. 17-cv-6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) .............................. 20

*Doe v. Am. Nat. Red Cross*,
   112 F.3d 1048 (9th Cir. 1997) ..................................................................... 19

*Dominguez on Behalf of Himself v. Yahoo, Inc.*,
   894 F.3d 116 (3rd. Cir. 2018) ..................................................................... 22

*Dow Chem. Co. v. Calderon*,
   422 F.3d 827 (9th Cir. 2005) ....................................................................... 17

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) ..................................................................7, 9

*Garvey v. Am. Bankers Ins. Co.*,
   Case No. 17-CV-986, 2019 WL 2076288 (N.D. Ill. May 10, 2019) ................. 20

*Harris v. World Fin. Network Nat. Bank*,
   867 F. Supp. 2d 888 (E.D. Mich. 2012) ...................................................... 14

*Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
   No. 16-cv-9281, 2018 WL 3474444 (N.D. Ill. July 19, 2018).......................... 20

*Huff v. TeleCheck Servs., Inc.*,
   923 F.3d 458 (6th Cir. 2019) ....................................................................... 11

*Ibey v. Taco Bell Corp.*,
   No. 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18,
   2012) ...............................................................................................13, 14

*In re Dental Supplies Antitrust Litig.*,
   No. 16-cv-696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ........................ 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ......................................................................... 5

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   7 F.C.C.R. 8752 (Oct. 16, 1992) ................................................................. 12

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (2012) ........................................................ 10, 12, 13

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992) ........................................................ 9, 11

*Klein v. Hyundai Capital Am.*,
No. 8:16-cv-01469-JLS-JCGx, 2016 WL 10519281 (C.D. Cal. Dec. 6, 2016) ........................................................................................................ 7

*Lambert v. Buth-Na-Bodhaige, Inc.*,
No. 2:14-CV-00514-MCE, 2014 WL 4187250 (E.D. Cal. Aug. 21, 2014) ..................................................................................................... 23

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
780 F.3d 1101 (11th Cir. 2015) ........................................................ 14, 15

*Legg v. PTZ Ins. Agency, Ltd.*,
321 F.R.D. 572 (N.D. Ill. 2017) ........................................................ 8, 11

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ..................................................................... 16

*Marks v. Crunch San Diego*,
LLC, 904 F.3d 1041 (9th Cir. 2018) ...................................................... 22

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ............................................................... 17

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ................................................................. 5

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ................................................................. 15

*Mussat v. IQVIA Inc.*,
No. 17-cv-8841, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ............. 19

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ............................................................... 17

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
   301 F. Supp. 3d 840 (N.D. Ill. 2018) ................................................................. 19

*Reardon v. Uber Techs., Inc.*,
   115 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................... 9

*Robins v. Spokeo, Inc.*,
   867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) ..................... 7

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................................. 5

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 16

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ......................................................................... 7, 12

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) .......................................................................................... 16

*Secure v. Ultimate Fitness Grp., LLC*,
   No. 18-cv-20483, 2019 WL 1612623 (S.D. Fla. Mar. 18, 2019) ........................ 22

*Simpson v. Ramada Worldwide, Inc.*,
   2012 WL 5988644 (N.D. Cal. Nov. 29, 2012) ..................................................... 6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...............................................................................passim

*Spratley v. FCA US LLC*,
   No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ........................ 20

*Stokes v. CitiMortgage, Inc.*,
   No. 14-cv-00278 BRO SHX, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ........ 16

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ............................................................................. 21

*Tosco Corp. v. Communities for a Better Env't,*
    236 F.3d 495 (9th Cir. 2001) .................................................................5

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) .....................................................................15

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ....................................................passim

*Wenokur v. AXA Equitable Life Ins. Co.,*
    No. 17-cv-00165, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017)...........20

*Whittlestone, Inc. v. Handi-Craft Co.,*
    618 F.3d 970 (9th Cir. 2010) ...............................................................6

*Winner v. Kohl's Dep't Stores, Inc.,*
    No. 16-cv-1541, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ....... 8, 11

**INTRODUCTION**

Plaintiff Sunil Daniel ("Plaintiff") alleges that, in the summer of 2018, he "visited a model Lennar home in Irvine, California," and "[u]pon arriving at the model home, [] was presented with a sign-in sheet which requested his name, cellular-telephone number, and e-mail." (*See* Complaint, ECF No. 1 at ¶ 11.) Plaintiff also alleges that during the same visit to tour model homes, he <u>voluntarily</u> "filled out the sign-in sheet and therein provided his ***name, California cellular telephone number***, and his e-mail" to Defendant Lennar Corporation ("Lennar"). (*Id.* (emphasis added).)  Plaintiff further alleges that shortly after his visit, "on or about October 17, 2018, Plaintiff received a text message from Lennar on his cellular telephone" inviting him to schedule a further visit to view new homes at a Lennar community in Southern California.  (*Id.* at ¶ 12.)

On these facts, Plaintiff alleges a single claim for relief under the Telephone Consumer Protection Act ("TCPA") on behalf of himself and a nationwide class, predicated on the notion that Lennar's contacting him was *unsolicited* and invaded his privacy because "[a]t no time prior to receiving the text message referenced in paragraph 12 had Plaintiff ever signed a document, whether in paper or electronic format, reciting that Lennar was authorized to send text messages to him using an automatic telephone dialing system for telemarketing or advertising purposes." (*Id.* at ¶ 15.)  Tellingly, Plaintiff seeks to ignore the transactional context in which he voluntarily provided his phone number to Lennar, and attempts to rely on an alleged technical violation of the TCPA to create Article III standing to sue Lennar.

However, Plaintiff's Complaint and putative class claims fail as a matter of law for at least two independent reasons, as explained below.

<u>*First*</u>, Plaintiff cannot allege any cognizable injury sufficient to meet Article III's standing requirements.  It is undisputed that Plaintiff affirmatively provided his contact information (including his telephone number) to Lennar during his visit to view new homes at a Lennar community, and thus, invited the very contact he

now complains of.  Because the TCPA was designed "to protect consumers from the **unwanted** intrusion and nuisance of **unsolicited** telemarketing phone calls and fax advertisements," only those uninvited communications could plausibly result in harm and confer standing.  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis added).   Here, Plaintiff has not (and cannot) allege that Lennar's text message to him was unwanted—indeed, a reasonable consumer would understand that, by providing her phone number to Lennar during a visit to a Lennar model home or Lennar community (also known as a "Welcome Home Center," *see* https://www.lennar.com/mylennar/resource-center/article/community-visit), it would reasonably follow that Lennar (or one of its operating affiliates) might contact that consumer regarding visiting a Lennar community for the prospective purchase of a Lennar home.  There could be no other plausible reason why Plaintiff — or any other consumer — would have provided Lennar his or her phone number in this context, seeking further communication with Lennar regarding viewing new Lennar homes for a prospective home purchase.

        Importantly, Plaintiff's theory of the case — that Lennar's alleged failure to obtain a hyper-technical, express "written consent" in compliance with Federal Communications Commission ("FCC") promulgated rules (*see* Complaint, ECF No. 1 at ¶ 28) is itself enough "harm" to confer Article III standing — is belied by controlling U.S. Supreme Court precedent.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Plaintiff's claimed "wrong" is nothing more than a "bare procedural violation, divorced from any concrete harm" that is insufficient to "satisfy the injury-in-fact requirement" of Article III.  *Id.*

        *Second*, Plaintiff's putative class definition seeking to represent any and "all persons" who received a text message from Lennar is defective.  Plaintiff's proposed class definition is impermissibly overbroad, sweeping within it consumers who have not been injured by Lennar's alleged conduct—including consumers who

expressly consented in writing to be contacted by Lennar, or whom invited contact from Lennar based on the provision of their phone numbers to Lennar during a visit to a Welcome Home Center.  Furthermore, Plaintiff attempts to assert his TCPA claim on behalf of a *nationwide* class of consumers.  But this Court lacks personal jurisdiction over non-resident Lennar as to the claims of non-California putative class members, as recently held by the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017). Because Plaintiff (a California resident) concedes that Lennar is a "Delaware corporation headquartered in Miami, Florida," this Court may not adjudicate putative class claims against Lennar in this forum brought on behalf of non-California consumers residing in other states.  This is particularly true given the fact that Plaintiff fails to allege that non-California residents were injured by any conduct by Lennar occurring in California.  (Complaint, ECF No. 1 at ¶ 5.)

For these reasons, the Court should dismiss Plaintiff's Complaint or, to the extent Plaintiff's claim survives, strike the class allegations from the Complaint. Alternatively, if the Court allows Plaintiff's case to proceed, it should stay this case pending the FCC's consideration of new rules that fundamentally impact this case, which were recently the subject of public comment and review.

## THE COMPLAINT

Plaintiff, a resident of California, alleges that Lennar is a Delaware corporation headquartered in Florida that "maintains homebuilding operations" in various parts of California. (ECF No. 1 at ¶¶ 4-5, 9.)  Plaintiff asserts that, "[o]n information and belief . . . Lennar regularly promoted, promotes, and continues to promote, its homes to prospective buyers through text message marketing." (*Id.* at ¶ 10.)  Plaintiff alleges that, in late summer 2018, he visited a Lennar Welcome Home Center in Irvine, California. (*Id.* at ¶ 11.) Plaintiff concedes that during his visit, he filled out a sign-in sheet, providing "his name, California cellular telephone number, and his email" to Lennar. (*Id.*)

1        Plaintiff further alleges that, on October 17, 2018, he received a text message

2  from Lennar inviting him to schedule a visit to view new homes in Irvine. (*Id.* at

3  ¶ 12.)  According to Plaintiff, "Lennar has violated the TCPA by sending

4  consumers *unsolicited* text messages for marketing and advertising purposes,

5  without prior express written consent, invading their right to privacy."  (*Id.* at ¶ 2

6  (emphasis added).) On behalf of himself, Plaintiff alleges that at "no time prior to

7  receiving the text message" had he "signed a document . . . reciting that Lennar was

8  authorized to send text messages to him using an automatic telephone dialing

9  system for telemarketing or advertising purposes" and that he had never "signed a

10  document . . . reciting that he was not required to provide consent as a condition of

11  purchasing any goods or services." (*Id.* at ¶ 15.)

12        Plaintiff further asserts that "his cellular-telephone number, along with

13  numerous other telephone numbers, was entered into a database and that Defendant

14  used equipment capable of storing and/or producing telephone numbers, as well as

15  capable of dialing such numbers, to send" him the text message. (*Id.* at ¶ 16.)

16  Without alleging any supporting facts, Plaintiff contends that "thousands of similar

17  messages" were sent to potential homebuyers who also had not "signed a

18  document . . . disclosing that they were authorizing the delivery of telemarking or

19  advertising messages by way of an automatic telephone dialing system, or

20  disclosing that they were not required to provide consent as a condition of

21  purchasing any goods or services." (*Id.* at ¶ 17.) Plaintiff does not allege any

22  actions by Lennar emanating from California, only that he is a California resident.

23        Plaintiff asserts a single claim for violation of 47 U.S.C. § 227(b)(1)(A)(iii).

24  (*Id.* at ¶¶ 25-32.) Plaintiff alleges this claim on behalf of himself and a purported

25  nationwide class, which consists of "all persons who, during the four years prior to

26  the filing of the Complaint in this action through the date of class certification,

27  received one or more text messages from Lennar Corporation on their cellular

28  telephone sent for an advertising or marketing purpose." (*Id.* at ¶ 18.)

## LEGAL STANDARD

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "In a facial attack," such as this one, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-985 (9th Cir. 2008). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), overruled on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

Under Rule 12(b)(6), the Court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." In this context, a complaint must contain factual allegations that, if "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements in a complaint—such as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'"—do not state a claim. *Id.* The legitimate, non-conclusory factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to

trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citations omitted). Similarly, under Rule 23(d)(1)(D), the Court "may issue orders that require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." This authority includes the power to "strike class allegations if the complaint plainly reflects that a class action cannot be maintained." *Simpson v. Ramada Worldwide, Inc.*, 2012 WL 5988644, at *2 (N.D. Cal. Nov. 29, 2012).

## ARGUMENT

## I.  PLAINTIFF LACKS STANDING UNDER ARTICLE III

The gravamen of Plaintiff's Complaint is centered upon Lennar's purported failure to comply with an FCC-created procedural requirement that a company obtain a specific type of express, written consent before contacting a consumer through automated means. (*See* Complaint, ECF No. 1 at ¶¶ 15, 28.) On these grounds, Plaintiff seeks statutory and treble damages under the TCPA. (*Id.* at ¶ 32.)

Even assuming the truth of Plaintiff's allegations, Plaintiff concedes that he voluntarily gave Lennar his phone number upon visiting a Lennar Welcome Home Center, manifesting his desire to be contacted at that number about Lennar homes. (*Id.* at ¶ 11.) There could be no other plausible reason why: (1) Lennar would request that Plaintiff provide his contact information, including his phone number, during a visit to a Lennar Welcome Home Center under these circumstances; or (2) Plaintiff would voluntarily provide Lennar this information during his visit to view new Lennar homes, for which there could be no other reason other than with regard to the prospective purchase of a Lennar home. To now claim that Lennar's communications to him were unsolicited, unwanted, or uninvited defies credulity.

### A.  Plaintiff Did Not Suffer Any Cognizable Injury As a Matter of Law.

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.  Courts within the Ninth Circuit apply a two-part test to determine whether a plaintiff has alleged a concrete injury when asserting a statutory violation: "(1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931, 200 (2018).

"In making the first inquiry, [courts] ask whether Congress enacted the statute at issue to protect a concrete interest that is akin to a historical, common law interest." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1174 (9th Cir. 2018). As for the second inquiry, it "requires some examination of the *nature* of the specific alleged [violations] to ensure that they raise a real risk of harm to the concrete interests [the statute] protects." *Id.* (citations and quotation marks omitted).

As explained by the Ninth Circuit, Congress enacted the TCPA "to protect consumers from the *unwanted* intrusion and nuisance of *unsolicited* telemarketing phone calls and fax advertisements." *Van Patten*, 847 F.3d at 1043 (emphasis added; citing Pub. L. 102-243, § 2, ¶ 12); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The Ninth Circuit has further explained that such unwanted calls constitute "invasions of privacy, intrusion upon seclusion," and "nuisance" to the consumer. *Van Patten*, 847 F.3d at 1043.  Put another way, the concrete interest(s) that the TCPA was intended to protect arise from consumers' rights to be left alone from contact they did not reasonably invite, most often from third-party strangers.  *Id.*  And as this Court has recognized, to sufficiently allege that Lennar caused him some cognizable injury—some violation of his privacy, intrusion on his seclusion, or nuisance—Plaintiff must plead (at a minimum) that the relevant text messages were unsolicited. *See Klein v. Hyundai Capital Am.*, No.

8:16-cv-01469-JLS-JCGx, 2016 WL 10519281, at *2 (C.D. Cal. Dec. 6, 2016) ("[B]oth history and Congress' judgment confirm that *unsolicited* robocalls cause sufficiently concrete harm to establish Article III standing." (emphasis added)).

But here, Plaintiff cannot allege such facts, or that Lennar's contacting him invaded his privacy.  To the contrary, Plaintiff affirmatively invited Lennar to contact him on his cellphone by providing his phone number to Lennar when he visited the Lennar Welcome Home Center to view model homes. (Complaint, ECF No. 1 at ¶ 11.) As can be inferred from the allegations in the Complaint, there could be no other reason for Plaintiff to have given Lennar his number except to be contacted regarding his search for a new home.  In fact, Plaintiff could have simply left his contact information blank (or refused to provide his phone number) when visiting that Lennar community.  But he did not.  Instead, he gave his phone number to Lennar during his visit, inviting contact from Lennar regarding new homes.

Thus, this case presents a classic fact-pattern directly akin to the facts underpinning the U.S. Supreme Court's decision in *Spokeo*; claims based purely on Lennar's alleged "bare procedural" failure to secure Plaintiff's express written consent using certain specific (or "magic" opt-in) language promulgated by the FCC.  *See Spokeo*, 136 S. Ct. at 1549.  This is particularly true here given the fact that Plaintiff doesn't allege (and cannot allege) that Lennar was not authorized to contact him on his cell phone by other means, such as by a live sales agent via text or otherwise.  Thus, it is Lennar's alleged failure to comply with the FCC's hyper-technical written consent language (or opt-out) requirements governing automated communications that form the basis for Plaintiff's claims.

And under these facts, such allegations are insufficient to confer Article III standing in TCPA cases. *See Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017) (holding that putative class members lacked standing to assert a TCPA claim for violation of the "procedural requirement" of written consent

because the "lack of a writing does not make the calls unsolicited"); *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-cv-1541, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017) ("Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC."); *see also Dutta*, 895 F.3d at 1176 (holding that a plaintiff who alleged he received an insufficient FCRA disclosure lacked standing because "although [he] made a plausible showing of [a] procedural violation of FCRA, he failed to establish facts showing he suffered actual harm or a material risk of harm").

Indeed, numerous courts have held that a consumer's provision of a phone number sufficiently demonstrated that the consumer invited the party to contact him at that number. *See, e.g.*, *Van Patten*, 847 F.3d at 1043-46[1]; *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014), aff'd, 636 F. App'x 715 (9th Cir. 2016); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1098-99 (N.D. Cal. 2015). Indeed, even the FCC previously concluded that the provision of a phone number signaled the consumer's consent to be contacted. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992) (explaining that "persons who knowingly release their phone numbers have

---

[1] While the Court in *Van Patten* held that the plaintiff had alleged Article III standing under the facts presented in that case, the Court explicitly noted that the plaintiff had "alleged a concrete injury" only because "the telemarketing text messages at issue . . . ***absent consent***, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Van Patten*, 847 F.3d at 1043 (emphasis added). Here, Plaintiff does not allege a complete lack of consent, but instead argues a bare procedural violation in how Lennar purportedly obtained his consent—*i.e.*, without obtaining sufficient written consent. (*See* Complaint, ECF No. 1 at ¶ 28.) In *Van Patten*, the Court did not consider whether this procedural violation could sufficiently constitute a cognizable injury because the <u>written</u> consent requirement did not apply. *Van Patten*, 847 F.3d at 1045 ("Because the alleged conduct here took place before the rule took effect on October 16, 2013, Defendants need not have obtained prior express written consent from Van Patten.").

in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary" and that "telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached").

### B. The FCC's Promulgation of Technical Consent Requirements Does Not Automatically Confer Article III Standing.

While Plaintiff may argue that the 2012 FCC Order, requiring express written consent using specific opt-in type language, automatically creates standing (and an implied injury) for non-compliance, that is not the law. (*See* Complaint, ECF No. 1 at ¶ 28.) As the Supreme Court has explained, identifying an injury in fact in the context of a statutory violation requires considering "both history and the judgment of Congress." *Spokeo*, 136 S. Ct. at 1549. As for history, the mere failure to obtain hyper-technical, express written consent, while simultaneously having invited the communication at issue is not a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." *Id.* And Congress plainly did not believe that the failure to obtain express written consent constituted a sufficiently cognizable injury, as it has never included such a requirement in the actual text of the TCPA. *Cf.* S. Rep. 102-178, at *4 (1991) ("In response to these concerns, however, the reported bill does not include the requirement included in the bill as introduced the requirement that any consent to receiving an automated call be in writing."); H. Rep. 102-317, *13 (1991) ("The Committee did not attempt to define precisely the form in which express permission or invitation must be given, but did not see a compelling need for such consent to be in written form."). Instead, the FCC—not Congress—promulgated the "express written consent" requirement two decades after the TCPA was enacted. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012).

Moreover, neither Congress nor the FCC can create a concrete injury where

1    none exists simply by creating a statutory or regulatory rule. Indeed, "[i]njury in

2    fact is a constitutional requirement, and it is settled that Congress" and the FCC

3    "cannot erase Article III's standing requirements by statutorily granting the right to

4    sue to a plaintiff who would not otherwise have had standing." *Spokeo*, 136 S. Ct.

5    at 1547-48; *see also Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir.

6    2019) ("There is a difference between failing to establish the elements of a cause of

7    action and failing to show an Article III injury. One is a failure of proof. The other

8    is a failure of jurisdiction. Yes, there can be overlap between the two inquiries. But

9    they are not one and the same."). Thus, even assuming Plaintiff has sufficiently

10   alleged that Lennar violated the FCC's written consent requirements, he still has

11   failed to identify any concrete injury flowing from that allegation because he

12   invited Lennar to contact him. *See Legg*, 321 F.R.D. at 577; *Winner*, 2017 WL

13   3535038, at *6.

14           It is these facts that distinguish the instant case from other TCPA decisions

15   where courts have found Article III standing for alleged violations of the TCPA

16   based on the lack of a <u>transactional nexus</u> between the provision of a consumer's

17   phone number and the unwanted contact.  Here, it is undisputed that Lennar's text

18   to Plaintiff was a "transaction-related" communication, to which Plaintiff consented

19   when he provided his phone number to Lennar during a Welcome Home Center

20   visit to view new homes.  *See Rules & Regulations Implementing the Tel.*

21   *Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. at 8769 ("[P]ersons who knowingly

22   release their phone numbers have in effect given their invitation or permission to be

23   called at the number which they have given, absent instructions to the contrary.");

24   23 F.C.C. Rcd. at 563 (FCC concluding that, "the provision of a cell phone number

25   to a creditor, e.g., as part of a credit application, reasonably evidences prior express

26   consent by the cell phone subscriber to be contacted at that number regarding the

27   debt").

28           In short, because Plaintiff has failed to allege any concrete injury, the Court

LENNAR'S MPA ISO MOTION TO DISMISS
Case No. 8:19-cv-00452-JLS-DFM

- 11 -

1   should dismiss his claims under Rule 12(b)(1).

2   **II.   PLAINTIFF'S TCPA CLAIM IS ALSO DEFICIENTLY PLED**

3   Beyond his failure to sufficiently allege standing, Plaintiff's claim is also

4   substantively flawed and must be dismissed under Rule 12(b)(6) for failure to state

5   a claim.

6   **A.   Plaintiff Has Not Alleged (and Cannot Plausibly Allege) That The Text He Received Was An Unsolicited Communication.**

7   Plaintiff's TCPA claim exceeds the scope of coverage intended by Congress

8   in enacting the statute.  As the Ninth Circuit has recognized, the "purpose and

9   history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs

10  to communicate with others by telephone in a manner that would be an invasion of

11  privacy." *Satterfield*, 569 F.3d at 954. Even Plaintiff's Complaint acknowledges

12  that a violation of the TCPA occurs only where the defendant sends a "consumer

13  *unsolicited* text messages."  (Complaint, ECF No. 1 at ¶ 2 (emphasis added).)

14  Plaintiff's lawsuit does not plausibly implicate this concern.

15  Indeed, before the 2012 Order, the FCC defined the concept of "consent"

16  broadly to include non-written forms of consent, including the provision of one's

17  phone number to be contacted. *See In re Rules & Regulations Implementing the Tel.*

18  *Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992). After October

19  2013, however, the FCC purported to require that companies obtain express written

20  consent from consumers, using specific language relating to automated messages

21  before they deliver such automated telemarketing messages. *See In the Matter of*

22  *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.

23  Rcd. 1830, 1838 (2012) ("2012 FCC Order"). In March 2014, the FCC issued

24  further guidance interpreting the TCPA, which is relevant here.  The FCC explained

25  that its "goal is to make sure the TCPA is not interpreted to inhibit communications

26  consumers may want and that do not implicate the harms TCPA was designed to

27  prevent." *In re Matter of Groupme, Inc./skype Commc'ns S.A.R.l Petition for*

28

*Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3442 (2014). The FCC explained that "Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications." *Id.* at 3444.

Here, Plaintiff does not allege (and cannot allege, in good faith) that he did not expect or desire to be contacted by Lennar. Instead, he affirmatively alleges the opposite: Plaintiff admits he provided Lennar with his "name, California cellular telephone number, and his e-mail." (Complaint, ECF No. 1 at ¶ 11.) There is no other plausible explanation for why Plaintiff provided Lennar with his phone number except to be contacted about Lennar homes available for purchase, the exact substance of the text he received from Lennar. (*See id.* at ¶ 12.)  Even the FCC's own order implementing the express written consent requirement recognized that the requirement should apply only to unwanted or unexpected calls.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1839 (2012) ("We conclude that requiring prior express written consent for telemarketing calls utilizing autodialed or prerecorded technologies will further reduce the opportunities for telemarketers to place *unwanted* or *unexpected* calls to consumers.").  Indeed, the "TCPA's statutory and legislative history emphasize that the statute's purpose is to prevent *unsolicited* automated telemarketing and bulk communications."  *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (emphasis added).

Thus, that Plaintiff did not provide his express written consent does not erase the transactional circumstances surrounding the provision of his phone number, suggesting that he wanted and expected to receive the at-issue communication from Lennar.  *See Van Patten*, 847 F.3d at 1046 ("The text messages at issue here were part of a campaign to get former and inactive gym members to return, and thus related to the reason Van Patten gave his number in the first place, to apply for a

gym membership.").  Accordingly, a single text message sent to Plaintiff, "who voluntarily provided his phone number" to Lennar, "does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA." *Ibey*, 2012 WL 2401972, at *3 (dismissing TCPA claim on that ground).

Because Plaintiff has failed to allege that he did not invite Lennar to contact him regarding new homes available for viewing and purchase, his TCPA claim fails under Rule 12(b)(6) and should be dismissed.  If given leave to amend, Plaintiff should be required to affirmatively plead the reason why he provided Lennar his telephone number if it was not for new home viewing and purchase solicitation purposes.

### B.   Plaintiff Also Fails to Plead Any Facts Supporting His Claim for Treble Damages.  It Should be Stricken or Dismissed.

In his Complaint, Plaintiff seeks treble damages under the TCPA, asserting in a conclusory fashion that Lennar "willfully and knowingly" violated the TCPA. (Complaint, ECF No. 1 at ¶¶ 29, 32.) However, Plaintiff offers only a single, conclusory statement that Lennar "was and is aware of the TCPA and its requirements, and, on information and belief, intentionally violated the law in an effort to maximize profits." (*Id.*) This threadbare assertion, however, is insufficient to trigger enhanced damages liability. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

This is particularly true where, as here, Plaintiff fails to allege any facts supporting his claim that Lennar's purported TCPA violations were "knowing" or "willful," especially because Plaintiff invited Lennar's communication.  *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (explaining that the "bare assertion in [a] complaint that the defendants 'willfully' and 'knowingly' violated the Act was a legal conclusion, not an allegation of fact that we must accept as true"); *Harris v. World Fin. Network Nat. Bank*, 867 F.

Supp. 2d 888, 895 (E.D. Mich. 2012) ("In order for Plaintiff to prove that Defendants knew that they acted in a manner that violated the statute (regardless if Defendants actually knew that they were violating the statute), Plaintiff must also show that Defendants knew that Plaintiff did not consent to the phone calls."); *see also Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute.").

Because Plaintiff has failed to plead any plausible facts demonstrating that the communications were unsolicited (which they were not), and fails to plead any facts to show that Lennar "knowingly or willfully" violated the law, the Court should dismiss or strike Plaintiff's request for treble damages. *See Iqbal*, 556 U.S. at 678 (noting that conclusory "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" do not state a claim); *see also Lary*, 780 F.3d at 1107 ("If we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are *not* 'willful or knowing.'" (alterations omitted)).

## III.  PLAINTIFF'S CLASS ALLEGATIONS ARE INFIRM AND MUST BE STRICKEN

Plaintiff's class allegations are impermissibly overbroad. Accordingly, the Court should strike these allegations from the Complaint under Rule 12(f).

### A.  Plaintiff's Omnibus Class Cannot Be Certified, As It Seeks to Include Putative Class Members Who Lack Standing.

Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) (citation omitted). Thus, "no class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). "To have standing to sue as

a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by *all members* of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (emphasis added). Where, as here, "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *see also Stokes v. CitiMortgage, Inc.*, No. 14-cv-00278 BRO SHX, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).

Here, Plaintiff's class definition ignores these bedrock principles, impermissibly sweeping in countless uninjured persons—including himself. Indeed, Plaintiff's putative class definition improperly includes, "***All persons*** who, during the four years prior to the filing of the Complaint in this action through the date of class certification, received one or more text messages from Lennar Corporation on their cellular telephone sent for an advertising or marketing purpose." (Complaint, ECF No. 1 at ¶ 18 (emphasis added).)

This omnibus class definition fails.  Not all consumers who "received one or more text messages from Lennar" can maintain a claim under the TCPA. To the contrary, as discussed, only those consumers who received an unwanted or uninvited text message might have standing to pursue a claim against Lennar. *Van Patten*, 847 F.3d at 1043. Moreover, even based on his theory of the case, Plaintiff makes no attempt to limit his class to only those consumers for whom Lennar did not receive express written consent to be contacted, the only TCPA issue raised by his Complaint. (Complaint, ECF No. 1 at ¶ 2.) Accordingly, Plaintiff's putative class definition improperly fails to distinguish between those consumers who may even remotely have a cognizable TCPA claim against Lennar, and those who plainly do not.

The existing class definition should be stricken—or at minimum, must be amended to define a potentially certifiable class.  And if the Complaint survives, resolving this class scope issue now (as opposed to at the class certification stage) will assist the parties in properly framing the issues and scope of class and merits discovery in this case.

**B.      This Court Lacks Personal Jurisdiction Over Lennar as to the Non-Resident Putative Class Members.**

Plaintiff's putative class definition is also overbroad as pled because it is not limited solely to California residents. This is improper, as the Court lacks personal jurisdiction over Lennar, a Delaware corporation headquartered in Florida, with regard to the claims of non-California putative class members. (*See* Complaint, ECF No. 1 at ¶ 5.)

As a non-resident of California, Lennar is subject to personal jurisdiction only if the exercise of jurisdiction both "satisf[ies] the requirements of the applicable state long-arm statute" and "comport[s] with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005) (quotation marks and citation omitted).  "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)); *see* Cal. Civ. Proc. Code § 410.10, the relevant inquiry boils down to "whether exercising jurisdiction [by a California court over Lennar] comports with due process," *Picot*, 780 F.3d at 1211.

There are two types of personal jurisdiction: general and specific. As a threshold matter, this Court cannot maintain general personal jurisdiction over Lennar based on the allegations in the Complaint. General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citing *Daimler*,

134 S. Ct. at 751 (internal quotation marks omitted)).  As Plaintiff asserts, Lennar is a Delaware corporation headquartered in Florida. (*See* Complaint, ECF No. 1 at ¶ 5.) Plaintiff makes no other allegations regarding Lennar's presence within California. The Supreme Court has recognized that the "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler*, 571 U.S. at 132. Thus, because Lennar is not "'at home' in California, [it] cannot be sued there for injuries plaintiffs attribute to" its conduct elsewhere (e.g., outside of California). *Id.* at 122.

Moreover, this Court also cannot maintain specific personal jurisdiction over Lennar as to the non-resident putative class members' claims, which have nothing to do with California or any of Lennar's alleged conduct in California. For a court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'  In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (citations omitted; alterations in original).

The Ninth Circuit employs a three-part test to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) the defendant must have "'purposefully direct[ed] [its] activities' toward the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citations omitted). Plaintiff bears the burden of proving the first two prongs.  *Id.*

The claims of out-of-state putative class members do not survive this test. Plaintiff does not allege any actions—*i.e.*, sending the relevant text messages—that Lennar took toward any non-California class member within the State of California.

Put differently, these putative class members "are not California residents and do not claim to have suffered harm in [this] State" and "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol-Myers*, 137 S. Ct. at 1782. Thus, Lennar's in-state conduct is not the "but for" cause of any injuries suffered by out-of-state class members. *See Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). As the Supreme Court explained in *Bristol-Myers*, "[t]he mere fact that other" putative class members, like Plaintiff, may have been affected "in California . . . does not allow the [Court] to assert specific jurisdiction over the nonresidents' claims." 137 S. Ct. at 1781. To the contrary, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* Thus, exercising jurisdiction over the out-of-state class members' claims would not comport with "fair play and substantial justice," particularly because alternative forums exist for non-resident class members to pursue their claims against Lennar, and because California courts maintain no interest in adjudicating the disputes of these non-resident class members. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

Multiple courts have concluded that the "settled principles regarding specific jurisdiction" applied in *Bristol-Myers*, *id.*, prevent <u>TCPA plaintiffs</u> from asserting nationwide class claims in identical circumstances where a non-resident defendant is sued for conduct that occurred outside the forum state. *See, e.g.*, *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018) ("Because these nonresidents' claims do not relate to defendants' contacts with Illinois, exercising specific personal jurisdiction over defendants with respect to them would violate defendants' due process rights."); *Mussat v. IQVIA Inc.,* No. 17-cv-8841, 2018 WL 5311903, at *3 (N.D. Ill. Oct. 26, 2018) (joining the "litany of other courts in this District and elsewhere to hold that the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over a

defendant in a putative class action where nonresident, absent members seek to aggregate their claims with an in-forum resident, even though the defendant allegedly injured the nonresidents outside of the forum"); *Garvey v. Am. Bankers Ins. Co.*, Case No. 17-CV-986, 2019 WL 2076288, at *2-3 (N.D. Ill. May 10, 2019) (same); *Bakov v. Consol. World Travel, Inc.*, No. 15-cv-2980, 2019 WL 1294659, at *13 (N.D. Ill. Mar. 21, 2019) (same); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16-cv-9281, 2018 WL 3474444, at *4 (N.D. Ill. July 19, 2018) (same).

Indeed, the TCPA cases cited above are consistent with numerous other federal courts that have applied *Bristol-Myers* to limit nationwide class actions in non-TCPA cases. *See, e.g.*, *DeBernardis v. NBTY, Inc.*, No. 17-cv-6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the court will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as this case, where there is no general jurisdiction over the Defendants."); *Chavez v. Church & Dwight Co.*, No. 17-cv-1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) (same); *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) ("[I]n this case, the out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims."); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."); *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process does

1  not wax and wane when the complaint is individual or on behalf of a class.").[2]

2  　　　Due process demands that, in order for a court to exercise personal

3  jurisdiction over a defendant, there must be a direct "connection between the forum

4  and the specific claims." *Bristol-Myers*, 137 S. Ct. at 178. Plaintiff has failed to

5  make such a connection as to non-resident putative class members, and thus, the

6  Court should strike his class allegations as to non-California residents.[3]

7  **IV.   ABSENT DISMISSAL, THE COURT SHOULD STAY THIS CASE**

8  　　　To the extent the Court concludes that any aspect of Plaintiff's case should

9  survive, Lennar requests that the Court stay this case pending forthcoming rules

10  from the FCC regarding the scope of the TCPA.  Because the comment period has

11  ended, any new FCC-promulgated rules interpreting the TCPA will likely be issued

12  within the next few months.

13  　　　Under the primary jurisdiction doctrine, this Court should stay Plaintiff's

14  action until the FCC issues its new rules.  The primary jurisdiction doctrine

15  instructs courts to "allocate initial decision making responsibility" to an agency

16  when a claim requires "resolution of an issue of first impression, or of a particularly

17  complicated issue that Congress has committed to a regulatory agency."  *Syntek*

18  *Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)

19  (quotation marks and citation omitted); *see also Clark v. Time Warner Cable*, 523

20  F.3d 1110, 1115 (9th Cir. 2008) (affirming referral to the FCC on primary

21  　　　―――――――――――――

22  　　　[2] Lennar recognizes that some District Courts within and outside of the Ninth

23  Circuit have declined to apply *Bristol-Myers Squibb* in the class action context. However, Lennar respectfully disagrees with the rationale employed in support of

24  those rulings, particularly given the fact that those cases ignore settled principles of

25  personal jurisdiction and due process.  Because there is no directly on point Ninth Circuit authority (including in the TCPA context), this Court should follow the

26  better-reasoned decisions declining to find personal jurisdiction or due process satisfied under these circumstances.

27  　　　[3] Alternatively, the Court should dismiss Plaintiff's class allegations as to

28  non-residents under Rule 12(b)(2) for lack of personal jurisdiction.

jurisdiction grounds because the FCC had begun "actively considering" a technological claim before the court). "'[N]o fixed formula exists for applying the doctrine of primary jurisdiction." *Clark*, 523 F.3d at 1115 (quoting *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006)).

Nevertheless, the Ninth Circuit has recognized that a stay is generally appropriate where there is "'(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Clark*, 523 F.3d at 1115 (quoting *Syntek,* 307 F.3d at 781 (citing *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir. 1987))).

This case is particularly apt for a stay, as the FCC has received public comments[4] and is reconsidering various of its prior rulings regarding the TCPA, including with regard to the definition of an automatic telephone dialing system ("ATDS"), a topic that has divided courts across the country and one that is essential to this case given Plaintiff's allegations about the type of technology used to contact Plaintiff via text message. *See, e.g.*, *Marks v. Crunch San Diego*, LLC, 904 F.3d 1041 (9th Cir. 2018); *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018); *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116 (3rd. Cir. 2018).

Congress has committed this issue to the FCC's rulemaking authority, and the FCC's decision will likely have a broad impact on text-message marketing and other related activities regulated by the TCPA.  Indeed, other courts have granted a stay under identical circumstances. *Secure v. Ultimate Fitness Grp., LLC*, No. 18-cv-20483, 2019 WL 1612623, at *1 (S.D. Fla. Mar. 18, 2019) ("Because, as Defendant notes, the FCC is currently seeking public comment and reconsidering

---

[4] *See* Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Tel. Consumer Prot. Act in Light of the Ninth Circuit's *Marks v. Crunch San Diego, LLC* Decision, No. 02-278, 2018 WL 4801356, at *1 (Oct. 3, 2018).

the definition of an ATDS, it is ADJUDGED that Defendant's motion to stay is GRANTED."); *Buhr v. ADT, Inc.*, No. 18-cv-80605 (S.D. Fla. 2019) (same); *see also Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-CV-00514-MCE, 2014 WL 4187250, at *3 (E.D. Cal. Aug. 21, 2014) (granting similar motion to stay where, as here, "(1) at least one petition that may affect Plaintiff's claim in this case is already before the FCC and the comment period has expired; (2) judicial economy weighs against issuing any decisions that may be undermined by anticipated rulings by the FCC; (3) the violations alleged by Plaintiff are not ongoing . . . so Plaintiff will not suffer further damages during the pendency of a stay; and (4) this case is in the earliest stage of litigation, such that Plaintiff will not be prejudiced by any delay and all parties will be spared the costs of discovery that could be rendered moot by FCC rulings").

## CONCLUSION

For the reasons discussed, Lennar respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety. To the extent the Court does not dismiss all of Plaintiff's claims, Lennar requests that the Court strike Plaintiff's class allegations. If Plaintiff is granted leave to amend, Lennar further requests that this Court stay this case for a reasonable period of time pending the release of the FCC's new order(s) interpreting the TCPA.

1    Dated:  July 26, 2019                    JONES DAY

2                                             /s/ Edward S. Chang

3                                             Darren K. Cottriel
                                              dcottriel@jonesday.com
4                                             John A. Vogt
                                              javogt@jonesday.com
5                                             Edward S. Chang
                                              echang@jonesday.com
6                                             JONES DAY
                                              3161 Michelson Drive
7                                             Suite 800
                                              Irvine, CA  92612.4408
8                                             Telephone:  +1.949.851.3939

9                                             Attorneys for Defendant
                                              Lennar Corporation
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LENNAR'S MPA ISO MOTION TO DISMISS
Case No. 8:19-cv-00452-JLS-DFM

1

# CERTIFICATE OF SERVICE

2

3        I, Jenice Thakur, declare:

4        I am a citizen of the United States and employed in Orange County, California.

5   I am over the age of eighteen years and not a party to the within-entitled action.  My

6   business address is 3161 Michelson Drive, Suite 800, Irvine, California  92612.4408.

7        On July 26, 2019, I served a copy of the following by electronic transmission:

8

9   **LENNAR CORPORATION'S NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS PLAINTIFF'S COMPLAINT, TO STRIKE CLASS ALLEGATIONS, AND REQUEST FOR STAY**

10

11  **LENNAR CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 12 MOTION TO DISMISS PLAINTIFF'S COMPLAINT, TO STRIKE CLASS ALLEGATIONS, AND REQUEST FOR STAY**

12

13  **[PROPOSED ORDER] GRANTING LENNAR CORPORATION'S RULE 12 MOTION TO DISMISS PLAINTIFF'S COMPLAINT, TO STRIKE CLASS ALLEGATIONS, AND REQUEST FOR STAY**

14

15       I am familiar with the United States District Court for the Central District of

16  California's practice for collecting and processing electronic filings.  Under that

17  practice, documents are electronically filed with the Court.  The Court's CM/ECF

18  system will generate a Notice of Electronic Filing (NEF) to the filing party, the

19  assigned judge, and any registered users in the case.  The NEF will constitute service

20  of the document.  Registration as a CM/ECF user constitutes consent to electronic

21  service through the Court's transmission facilities.  Under said practice, a true and

22  complete copy of the foregoing was filed and served upon all counsel of record via

23  the court's ECF filing system.

24       Executed on July 26, 2019, at Irvine, California.

25

26

27                                        /s/ Jenice Thakur
                                          _____
                                          Jenice Thakur

28